

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-2009

# Marcum v. Harris

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1123

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Marcum v. Harris" (2009). *2009 Decisions.* Paper 1596.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1596

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1123

ROY L. MARCUM,
                              Appellant

v.

GWENDOLYN HARRIS; DEVON BROWN; JOHN E. MAIN; MERRILL MAIN;
GRACE ROGERS; PAUL LEGANA; JOHN VARNEY; JACKLYN OTINO;
HEATHER BURNET; SHANTAY BRAME; STATE OF NEW JERSEY;
GREEN, Department of Corrections Officer
GLENN FERGUSON; JOHN DOE NO. 1-10
(Name being gender neutral and fictitious as the
true identity is unknown) Individually and in their respective
Official Capacities, Jointly, Severally and Individually

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 06-cv-04556)
District Judge:  Honorable Peter G. Sheridan

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2009

Before: SLOVITER, BARRY, ROTH, Circuit Judges

(Opinion Filed:  April 2, 2009)

OPINION

BARRY, <u>Circuit Judge</u>

Roy Marcum appeals the order of the District Court granting defendants' motion for summary judgment on statute of limitations grounds in Marcum's action brought under 42 U.S.C. § 1983. We will affirm.

**I.**

Marcum is civilly committed at the Special Treatment Unit (STU) in Kearny, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act, *see* N.J.S.A. §§ 30:4-27.24 – 27.38. On April 8, 2004, he was en route to an appointment with his privately-retained psychologist when an STU officer informed him that he would not be able to take his comb into the meeting. A verbal confrontation between Marcum and the STU officer ensued, and Marcum was assigned to the Modified Activities Program (MAP) later that day.[1]

MAP is a component of the clinical treatment program at the STU that focuses on stabilizing the disruptive behavior of uncooperative residents. Residents who are placed in MAP have fewer privileges than their fellow committees at STU – visiting hours are restricted, random cell searches are conducted more often, contact with other residents is greatly diminished, and their unescorted movement is limited. *See M.X.L. v. N.J. Dep't of Human Servs.*, 876 A.2d 869, 873-74 (N.J. Super. Ct. App. Div. 2005). An essential

---

[1] It appears from the record that Marcum was not the aggressor in that confrontation. (Appendix at 81); (*see id.* at 95 (STU's "clinical impression is that [Marcum] had a relatively limited contributory role in the volatile interaction")).

element of the program is an exploration of "the behavior that resulted in MAP placement" through discussion in group therapy. *Id.* at 874.[2]

Marcum believed that he was unjustly placed in MAP, but refused to discuss his behavior in group therapy. Instead, on June 7, 2004, he wrote to the Program Coordinator of the STU and requested a "hearing . . . to resolve the [justification underlying] his placement in MAP." (Dist. Ct. Docket No. 8-4, at 75). In response, by letter dated June 17, 2004, the Program Coordinator informed him that a hearing was not necessary because his route out of MAP was straightforward, requiring no more than attendance at "several consecutive [group therapy] sessions." (*Id.* at 80.)[3] Marcum wrote the STU's Director of Psychology on at least three occasions – June 7, 16, and July 7, 2004 – requesting reconsideration of his MAP status and a hearing on the merits of his original placement. He received two responses. First, on July 16, 2004, the Director of Psychology notified him that "the place to deal with the matters raised in your

---

[2] MAP group therapy serves a limited purpose that is unrelated to the sex offenses underlying the residents' commitment in the STU. (*See* Appendix at 95-96 ("MAP group [therapy] is not sex offender specific treatment. Residents' criminal sexual histories are generally not relevant and not discussed")); *see also M.X.L.*, 876 A.2d at 874 (therapy is aimed at fostering an understanding of residents' actions *within* the STU to avoid "similar problem[atic behavior] in the future").

[3] The Program Coordinator elaborated, writing that Marcum's response to his MAP placement "[was] possibly more noteworthy than the verbal confrontation that precipitated [his] placement in MAP." (Dist. Ct. Docket No. 8-4, at 80.) He further stated that Marcum's "behavior (e.g. poor attendance [at group therapy]) subsequent to [his] MAP placement . . . led to [his] extended stay in the MAP program." (*Id.*)

correspondence is in MAP group." (Appendix at 95); (*see id.* ("you would almost certainly have been back in general population long ago had you attended MAP group and exerted any effort to discuss [your behavior]")). On August 19, 2004, Marcum was further informed that he would not be transitioned out of MAP until he demonstrated *at group therapy* that he was stable enough to join the general population. (*Id.* at 97.)

Marcum persisted in his decision not to attend group therapy, and instead, according to his complaint, "filed numerous civil lawsuits and innumerable grievances" regarding his MAP placement. (*Id*. at 56.) He was not permitted to rejoin the general population until March 21, 2006, after nearly two years in MAP.

Marcum filed this action on September 22, 2006, alleging that his initial placement into MAP, without a hearing, violated procedural due process, and that the subsequent conditions of that placement ran afoul of substantive due process. He further contends that his MAP placement gave rise to a host of other constitutional violations, including violations of the First, Fourth, Fifth and Sixth Amendments.

Defendants, who are employees of the New Jersey Department of Corrections and the New Jersey Department of Human Services (and the State itself), moved to dismiss on, inter alia, statute of limitations grounds. The District Court converted that motion into a motion for summary judgment, and held that because the alleged constitutional claims were the continued effects of Marcum's initial placement in MAP, they accrued on April 8, 2004. The Court therefore concluded that this action, filed on September 22,

2006, was time-barred.

## II.

We have jurisdiction over Marcum's appeal from a final order of the District Court under 28 U.S.C. § 1291, and "our standard of review of a grant of summary judgment is plenary." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008).

Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "For [§] 1983 actions in New Jersey, 'that statute is N.J.S.A. [§] 2A:14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action.'" *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) (quoting *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987)). Thus, the limitations period for Marcum's claims is two years. *Id.* The date on which that period begins, however, is a question of federal law. *See Wallace,* 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law") (emphasis in original). Accrual occurs "when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (quotations and citations omitted). In the context of § 1983, "[t]hat is the date that the plaintiff knew or should have known that his constitutional rights had been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

Marcum contends that because his MAP placement did not end until March 21, 2006 – or well within the statutory period – his claims remain actionable. We expressly held in *O'Connor*, however, "that time-barred claims cannot be resurrected by being aggregated and labeled continuing violations." 440 F.3d at 129; *cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding, in the context of employment discrimination, that "discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Marcum's § 1983 action stems from two affirmative acts by the defendants – first, his initial placement in MAP, and second, the decision to condition his release from MAP on participation in MAP group therapy. Every other alleged constitutional wrong is a "lingering consequence[]" of those two discrete decisions. *See Savory*, 469 F.3d at 673; *cf. Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)) (in employment discrimination context, "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful") (emphasis in *Ricks*). Marcum was aware of his placement on April 8, 2004, and by August 19, 2004 he had received three letters from the administration of the STU informing him that the placement would not be revisited unless he attended group therapy. At minimum, "[t]he law required him to sue within two years of the [later date]." *O'Connor*, 440 F.3d at 129; *see Wallace*, 549 U.S. at 391 (claim accrues on date alleged wrongful act is known, not when the full extent of

the injury comes to be known).

Marcum contends, in the alternative, that the statute of limitations should be equitably tolled because defendants fraudulently concealed the accrual of his claim. More specifically, he argues that the Residents' Guide to the STU provides that a resident can challenge his MAP placement by filling out a "Request System & Remedy Form," which will initiate an administrative grievance process. Marcum filled out the form on November 5, 2004, requesting a meeting to "discuss [his] continued . . . MAP status," (Appendix at 79), and was notified on November 11, 2004 that his request was denied but that his "MAP status concerns" could be raised at MAP group therapy. (*Id.* at 80) He contends that he did not become aware of his constitutional claims until that date. Defendants point out, accurately, that Marcum failed to raise this argument in the District Court, and that it is therefore waived. *See Gass v. V.I. Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002) ("[i]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument" and "[w]e only depart from this rule when a manifest injustice would result") (quotations and citations omitted).

In any event, a plaintiff seeking to establish fraudulent concealment bears a heavy burden. Marcum must demonstrate "(1) 'active misleading' by the defendant, (2) which prevents [him] from recognizing the validity of [his] claim within the limitations period, [and] (3) [that his] ignorance is not attributable to [his] lack of 'reasonable due diligence in attempting to uncover the relevant facts.'" *Matthews v. Kidder, Peabody & Co., Inc.*,

260 F.3d 239, 256 (3d Cir. 2001) (quoting *Forbes v. Eagleson*, 228 F.3d 471, 486-88 (3d Cir. 2000)). While Marcum may have been initially misled by the Residents' Guide, any doubt regarding the availability of an administrative grievance process was resolved by the letters he received in June, July, and August 2004. The November 11, 2004 denial of his "Request System & Remedy Form" contained no new information; it merely reiterated that Marcum's concerns about MAP could only be addressed in group therapy.[4] There is no showing of fraudulent concealment here.

Because Marcum knew or should have known about his constitutional claims on (or before) August 19, 2004, when he was told for the third time that his release from MAP was conditioned upon participation in group therapy, his "cause of action persisted for two years [from that date] and then lapsed." *O'Connor*, 440 F.3d at 129.

**III.**

Marcum's § 1983 action is time-barred. We will, therefore, affirm the District Court's order granting defendants' motion for summary judgment.

---

[4] In response to our request for letter briefing, Marcum argued for the first time that the statute of limitations should have been tolled while he was exhausting available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Because that argument, too, was waived, we note only that Marcum was not a "prisoner" within the meaning of the Act. *Id.* at § 1997e(h); *see Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (holding that plaintiff detained pursuant to California's Sexually Violent Predators Act is not a "prisoner" as that term is used in 42 U.S.C. § 1997e because his "detention is not . . . punishment for his criminal conviction but rather a civil commitment for non-punitive purposes").