**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4317
_____

JOHN BANDA,
 Appellant
v.

Y. CORNIEL, Program Coordinator sued in their personal capacities; M. MAIN,
Director/Treatment Team Member sued in their personal capacities; S. ADAMS,
Treatment Team Member sued in their personal capacities; T. SPANGUOLO, Treatment
Team Member sued in their personal capacities; J. OTTINO, Treatment Team Member
sued in their personal capacities; C. BERGEN, Treatment Team Member sued in their
personal capacities; R. VAN PELT, Treatment Team Member sued in their personal
capacities; CALABRESE, Treatment Team Member sued in their personal capacities; J.
MCBRIDE, Treatment Team Member sued in their personal capacities; T. MITCHELL,
Treatment Team Member sued in their personal capacities; R. CANETE, Treatment
Team Member sued in their personal capacities; A. PAYNE, Treatment Team Member
sued in their personal capacities; H. BURNETT, Treatment Team Member sued in their
personal capacities; T. ROTH, Treatment Team Member sued in their personal
capacities; J. BURNS, Treament Team Member sued in their personal capacities; R.
FELDMANN, Treatment Team Member sued in their personal capacities; E. QUALIS;
M. TARULLI, Treatment Team Member sued in their personal capacities; S. SMITH,
Treatment Team Member sued in their personal capacities; E. BROWN, Treatment Team
Member/Former Facilitator sued in their personal capacities; L. CHIAPPETTA, B.A.,
Asst. Social Worker/Treatment Team Member sued in their personal capacities; K.
STOKES, Social Worker/Former Facilitator sued in their personal capacities; V.
BRICKHOUSE, Rec. Department Supervisor sued in their personal capacities; MS.
MCALLISTER, DHS Rec. Staff sued in their personal capacities; MS. SIDDIGO,
D.H.S. Rec Staff sued in their personal capacities; M. CAHILL, Treatment Team
Member; BRIAN P. HUGHES, Assistant Deputy Public Defender sued in their personal
capacities
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-13-cv-04240)
District Judge: Honorable Esther Salas

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2017

Before:  AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 15, 2017)
_____

OPINION[*]
_____

PER CURIAM

John Banda appeals pro se from the District Court's order dismissing his complaint filed under 42 U.S.C. § 1983.  We will affirm in part, vacate in part, and remand for further proceedings.

I.

Banda is currently civilly committed as a sexually violent predator at the Special Treatment Unit (STU) in Avenel, New Jersey.  He filed this action against various STU staff members, alleging that they retaliated against him for filing grievances by placing him in a Modified Activities Program (MAP),[1] which resulted in the loss of numerous

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As we have explained, "MAP is a component of the clinical treatment program at the STU that focuses on stabilizing the disruptive behavior of uncooperative residents. Residents who are placed in MAP have fewer privileges than their fellow committees at STU—visiting hours are restricted, random cell searches are conducted more often, contact with other residents is greatly diminished, and their unescorted movement is

privileges, including his job.  This controversy started when Banda submitted an "Inmate

Remedy System Form" in late March 2012, stating that he had been asked—presumably

by a staff member—about his release plan.  Banda wrote in the remedy form, "[n]o

disrespect, But after I Win My Civil Commitment Writ of Habeas Corpus, that would be

none of your business."  D.C. dkt. #1 at 40.  A staff member responded a few days later,

stating that "this is neither [a] request or complaint.  It's an angry statement and a waste

of a form like this.  No doubt, you expressed exactly this to the [staff member] who asked

the question.  Please exercise judgment."  Id.  Banda replied soon after: "So what if you

feel that this is a waste of a form, you folks waste paper each time you write your

fraudulent reports on us residents.  So what if you may take it as an angry statement, I am

just being informative and factual . . . so display your ignorance somewhere else.  It's not

needed here."  Id.

About a month later, the Vocational Department sent Banda an unsigned memo

stating that he had been denied overtime and access to an unspecified "sensitive area"—

privileges that are "awarded in conjunction with [] cooperation in treatment," according

to the memo.  Id. at 41.  Banda immediately submitted another remedy form, complaining

that the memo was a waste of paper because he had not been permitted overtime or

access to sensitive areas for the past eight years.  A staff member responded and advised

Banda that his "request [was] unintelligible."  Banda submitted a reply, characterizing the

response as "dumb and stupid," stating that "you folks waste paper as well in sending

limited."  Marcum v. Harris, 328 F. App'x 792, 794 (3d Cir. 2009) (non-precedential).

3

these asinine memos about overtime and sensitive area." Id. at 42. About a week later, on May 21, 2012, Defendant Program Coordinator Corniel issued a memorandum to the Assistant Superintendent, stating that "the Treatment Team is placing resident Banda [] on Program MAP status effective immediately. Despite counseling on the matter . . . . Banda utilizes abusive language towards staff members when expressing his views on the grievance forms. Moreover, resident Banda does not utilize the grievance/request system to note a grievance or make a request." Id. at 38.

Banda submitted at least two more grievance forms containing similar language, one in July and the other in September. In August, Defendant Program Coordinator Cahill extended Banda's MAP status, observing that "he has not adequately addressed his behavioral issues that resulted in his [] placement." Id. at 47. Cahill extended his status again in September, observing that "Banda removed a[n] activity sign-up sheet . . . result[ing] in the activity being cancelled. Mr. Banda then proceeded to write a Remedy/Grievance form regarding the lack of the activity." Id. at 48. The last available grievance is from October 2012, when Banda advised staff to "have a thicker skin." Id. at 50. An April 4 memo from Corniel to the Assistant Superintendent advised that the treatment team had removed Banda from MAP as he had "addressed the behaviors that led to his [] placement as exhibited by a decrease in grievance submissions." Id. at 56.

Banda filed this action a few months later, claiming that he was entitled to use the language that he did, and that Defendants improperly retaliated against him (by placing him in MAP) for doing so. He cited a provision of the STU's "Resident's Guide" that

4

stated "[n]o one filing a grievance shall incur any form of restraint, interference, coercion, discrimination, or reprisals as a result of that action," and also suggested that because he was in a treatment facility—and not a correctional facility—he enjoyed a right to utter "crude, coarse, vulgar, and offensive statement[s] made in the context of psychotherapy that was not threatening [and] not exhortative of disobedience or violence." D.C. dkt. #1 at 28. He also alleged two additional instances of retaliation arising from his grievances—that Defendants removed a law-library clerk from his wing and refused him entry to a "special banquet"—and asserted an unrelated claim against his public defender.

The District Court initially screened Banda's complaint under 28 U.S.C. § 1915(e)(2)(B), and dismissed his claims related to the law-library clerk, special banquet, and public defender. It permitted him to proceed on the other retaliation claims, however, observing that "[t]he language used by Corniel [in the April 4 memo] could indicate that [Banda's] placement on MAP status was related to the actual filing of the grievances and not the content." About a year later, the District Court granted Defendants' motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), concluding that 19 Defendants lacked sufficient personal involvement, and that Banda failed to state a claim against the remaining five Defendants—Chiapetta, Stokes, Brickhouse, Main, and Corniel—because his "own allegations show that he was not deterred [from filing grievances] by his MAP placement, and, therefore, this placement cannot be an adverse action for the purpose of a § 1983 retaliation claim." The Court

5

dismissed Banda's complaint without prejudice, but instead of amending his complaint, he filed a motion for reconsideration, arguing that his allegations were sufficient to state a claim. The District Court denied reconsideration, and Banda timely appealed.

II.

We have jurisdiction under 28 U.S.C. § 1291.[2] We exercise plenary review over the District Court's dismissal under Rule 12(b)(6), W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 (3d Cir. 2010), and ask whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A First Amendment retaliation claim requires a plaintiff to plead (1) a constitutionally protected activity; (2) an "adverse action . . . . sufficient to deter a person of ordinary firmness" from engaging in the activity; and (3) a casual connection. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks and citation omitted). The District Court concluded that Banda's MAP placement was not an adverse action because it did not actually deter him from continuing to file grievances. But whether Banda was *actually* deterred is immaterial; the question is whether "a person of ordinary firmness" would have been deterred. Id.; see also Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) ("[T]he fact that a particular plaintiff . . . responded to retaliation with

---

[2] We conclude that the District Court's dismissal without prejudice is a final order under 28 U.S.C. § 1291 because Banda has elected to stand on his complaint. See Frederico v. Home Depot, 507 F.3d 188, 192 (3d Cir. 2007).

6

greater than 'ordinary firmness' does not deprive him of a cause of action."). Banda sufficiently pleaded an adverse action because his MAP placement—in addition to other significant restrictions—cost him his job. See Mack v. Warden Loretto FCI, 839 F.3d 286, 297 (3d Cir. 2016) (loss of prison job is sufficiently adverse to state a retaliation claim).

Accordingly, we will vacate the District Court's dismissal of Banda's retaliation claims related to his MAP placement against Defendants Chiapetta, Stokes, Brickhouse, Main, and Corniel, and remand to the District Court for further proceedings consistent with this opinion. We will affirm the District Court's decision in all other respects.[3] We express no view as to whether Banda sufficiently pleaded the other elements of a retaliation claim—whether his filing of grievances in this manner and under these circumstances constituted a protected activity or whether he has sufficiently alleged the requisite causal link—or whether Defendants would be entitled to qualified immunity.

---

[3] Banda waived any challenge to the District Court's dismissal of the other Defendants or claims by failing to address their dismissal in his opening brief. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").