No. 119,813

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY J. BURCH,
*Appellant*,

v.

TIMOTHY KECK, SECRETARY OF KANSAS DEPARTMENT FOR AGING AND DISABILITY
SERVICES, et al.,
*Appellees*.

SYLLABUS BY THE COURT

A resident of the Kansas Sexual Predator Treatment Program is not required to exhaust administrative remedies before bringing an action under 42 U.S.C. § 1983 (2012).

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed May 24, 2019. Reversed and remanded.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Great Bend, for appellant.

*Kelly G. Cunningham*, senior litigation counsel, Kansas Department for Aging and Disability Services, for appellees.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

ARNOLD-BURGER, C.J.:  Generally, a person need not exhaust administrative remedies before bringing an action under 42 U.S.C. § 1983 (2012). Timothy J. Burch, a resident of the Kansas Sexual Predator Treatment Program (SPTP), brought a § 1983 action alleging that SPTP officials violated his constitutional rights by unlawfully seizing

1

his property without affording him due process. The district court dismissed the case because Burch failed to prove that he exhausted his administrative remedies. Because exhaustion of administrative remedies is not required for residents of the Kansas SPTP bringing § 1983 claims, the district court's judgment is reversed and remanded.

FACTUAL AND PROCEDURAL HISTORY

Burch is a resident of the SPTP at Larned State Hospital. The Kansas Department for Aging and Disability Services (KDADS) administers the SPTP. In June 2017, Burch filed a civil rights complaint under § 1983 alleging that SPTP officials violated his constitutional rights by unlawfully seizing his property without affording him due process. Burch named KDADS Secretary Timothy Keck, Assistant Clinical Director Keri Applequist, and Program Manager Haleigh Bennett as defendants. KDADS moved to dismiss, arguing that the district court lacked jurisdiction to consider Burch's claims because he failed to exhaust his administrative remedies as required by K.S.A. 2018 Supp. 59-29a24 (persons committed to the SPTP required to exhaust administrative remedies prior to bringing any civil action). The district court agreed and dismissed Burch's case for failing to prove that he exhausted his administrative remedies. Burch appealed.

After briefs were filed in the case, this court issued an order for supplemental briefing ordering the parties to address the holdings in *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988*), Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), and *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 20 P.3d 39 (2001), as they relate to whether §1983 preempts K.S.A. 2018 Supp. 59-29a24. The parties have submitted their supplemental briefs and we are ready to rule.

2

Burch argues that the district court erred in dismissing his case for failure to exhaust administrative remedies. He makes two arguments: (1) He did try to exhaust his administrative remedies, and (2) he did not have to exhaust administrative remedies because doing so would be a futile act. In supplemental briefing, he adds a third argument, that a state statute cannot preempt litigation of his claim under § 1983. Because his final claim is dispositive, we begin and end with it.

"An allegation that a party is required to or has failed to exhaust administrative remedies presents a question of law, and the appellate court's standard of review is unlimited." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

Burch filed his claim under 42 U.S.C. § 1983. This statute "'is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred.'" *Prager*, 271 Kan. at 11 (quoting *Swinehart v. City of Ottawa*, 24 Kan. App. 2d 272, 275, 943 P.2d 942 [1997]). "A § 1983 claim has two essential elements: (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Prager*, 271 Kan. at 11-12.

Section 1983 itself contains no requirement that persons exhaust available administrative remedies before bringing an action under the statute. Yet some states do have statutes requiring persons to exhaust administrative remedies before bringing civil actions. Relevant to this case is K.S.A. 2018 Supp. 59-29a24:

"Any person civilly committed pursuant to the Kansas sexually violent predator act, prior to filing any civil action, including, but not limited to, an action pursuant to K.S.A. 60-1501 et seq., and amendments thereto, naming as the defendant the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary for aging and disability services or an employee of the Kansas department for aging and disability services, while such employee is engaged in the performance of such employee's duty, shall be required to have exhausted all administrative remedies concerning such civil action. Upon filing a petition in a civil action, such person shall file with such petition proof that all administrative remedies have been exhausted."

The issue here is determining whether § 1983 preempts state laws imposing exhaustion requirements.

The United States Supreme Court addressed state exhaustion of administrative remedies requirements in the context of § 1983 claims in *Patsy*, 457 U.S. 496. There, Georgia Patsy filed a § 1983 action alleging that her employer, Florida International University, denied her employment opportunities solely because of her race and sex. The district court dismissed Patsy's action because she failed to exhaust available administrative remedies. The United States Supreme Court granted certiorari to address "[t]he question of whether exhaustion of administrative remedies should ever be required in a § 1983 action . . . ." 457 U.S. at 500. The Court noted that the issue was not an issue of first impression, because "on numerous occasions" it has "rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies." 457 U.S. at 500. Therefore, the Court had to determine whether its prior decisions misconstrued the meaning of § 1983.

After examining the legislative history to § 1 of the Civil Rights Act of 1871, the precursor to § 1983, the Court stated: "Although we recognize that the 1871 Congress did not expressly contemplate the exhaustion question, we believe that the tenor of the debates over § 1 supports our conclusion that exhaustion of administrative remedies in

4

§ 1983 actions should not be judicially imposed." 457 U.S. at 502. The Court also looked at more recent legislative history to determine congressional intent. 457 U.S. at 507. In 1980, Congress enacted the Civil Rights of Institutionalized Persons Act (CRIPA). 42 U.S.C. § 1997 et seq. (1980). In § 1997e of this Act, Congress "created a specific, limited exhaustion requirement for adult prisoners bringing actions pursuant to § 1983." 457 U.S. at 508. The Supreme Court found that "Section 1997e and its legislative history demonstrate that Congress understood that exhaustion is not generally required in § 1983 actions, and that it decided to carve out only a narrow exception to this rule." 457 U.S. at 508. The Court found that "[a] judicially imposed exhaustion requirement would be inconsistent with Congress' decision to adopt § 1997e and would usurp policy judgments that Congress has reserved for itself." 457 U.S. at 508.

The *Patsy* Court dealt with a § 1983 claim brought in federal court. But in *Felder*, 487 U.S. 131, the Supreme Court applied the rule of *Patsy* to § 1983 actions brought in state court. There, Bobby Felder filed a § 1983 action in Wisconsin state court alleging police misconduct. The case made its way to the Wisconsin Supreme Court, which held that the action should be dismissed because Felder failed to comply with a state notice-of-claim statute. 487 U.S. at 137-38. This statute provided that a person could not sue a state governmental subdivision, agency, or officer unless the person provided notice of the claim within 120 days of the alleged injury, or proved that the relevant subdivision, agency, or officer had actual notice of the claim and was not prejudiced by the lack of written notice. The party bringing suit must also show that the party submitted "an itemized statement of the relief sought to the governmental subdivision or agency, which then has 120 days to grant or disallow the requested relief." 487 U.S. at 136-37. Finally, claimants had to sue within six months of receiving notice that the agency disallowed the claim. In holding that Felder had to adhere to the state statute's requirements before bringing an action under § 1983, the Wisconsin Supreme Court reasoned:

5

"[W]hile Congress may establish the procedural framework under which claims are heard in federal courts, States retain the authority under the Constitution to prescribe the rules and procedures that govern actions in their own tribunals. Accordingly, a party who chooses to vindicate a congressionally created right in state court must abide by the State's procedures." 487 U.S. at 137.

The United States Supreme Court reversed. 487 U.S. at 138. The Court began by saying that "[n]o one disputes the general and unassailable proposition relied upon by the Wisconsin Supreme Court below that States may establish the rules of procedure governing litigation in their own courts." 487 U.S. at 138. But the Court added that "where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.' [Citation omitted.]" 487 U.S. at 138. The Court framed the issue as one of preemption, asking whether "application of the State's notice-of-claim provision to § 1983 actions brought in state courts [is] consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead '"stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"'? [Citations omitted.]" 487 U.S. at 138.

The Court found that "application of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts." 487 U.S. at 141. The Court also found that allowing state courts to enforce notice-of-claim statutes in § 1983 actions "will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether the litigation takes place in state or federal court." 487 U.S. at 141. The Court could not allow states to "apply such an outcome-determinative law when entertaining substantive federal rights in their courts." 487 U.S. at 141.

In *Felder*, the Supreme Court noted that the notice-of-claim statute "operates, in part, as an exhaustion requirement, in that it forces claimants to seek satisfaction in the

6

first instance from the governmental defendant." 487 U.S. at 142. The Court thought "that Congress never intended that those injured by governmental wrongdoers could be required, as a condition of recovery, to submit their claims to the government responsible for their injuries." 487 U.S. at 142. The Court held that a state-imposed exhaustion requirement was impermissible because states are not permitted "to place conditions on the vindication of a federal right." 487 U.S. at 147.

The State makes two arguments that § 1983 does not preempt K.S.A. 2018 Supp. 59-29a24.

First, the State cites the limited exhaustion requirement for prisoners created by the CRIPA discussed by the *Patsy* Court. The CRIPA addressed the rights of institutionalized persons. The Act covers several types of institutions, including an institution which is "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped" and an institution which is "a jail, prison, or other correctional facility." 42 U.S.C. § 1997(1)(B) (2012). Initially, the limited exhaustion requirement provided that courts could continue a case for 90 days "in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available" in actions brought by "an adult convicted of a crime confined in any jail, prison, or other correctional facility." 42 U.S.C. §1997e(a) (1980). In 1996, Congress amended this section with the Prison Litigation Reform Act (PLRA). See 28 U.S.C. § 1915 (1996). Now, 42 U.S.C. § 1997e(a) (2013) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

7

The State asserts that Burch is like a "prisoner confined in any jail, prison, or other correctional facility" for the purposes of the 42 U.S.C. § 1997e(a) exhaustion provisions. This argument is not persuasive because Burch is not a prisoner and he is not confined to a jail, prison, or other correctional facility.

Burch is not a prisoner because Kansas' Sexual Predator Treatment Program is an "involuntary civil commitment process." K.S.A. 2018 Supp. 59-29a01(a). A "sexually violent predator" is a "person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence and who has serious difficulty in controlling such person's dangerous behavior." K.S.A. 2018 Supp. 59-29a02(a). Many courts have found that persons in sexually violent predator programs are not "prisoners" as defined by the PLRA. See *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009); *Michau v. Charleston County, S.C.*, 434 F.3d 725, 727 (4th Cir. 2006); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002); *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000); *Marcum v. Harris*, 328 Fed. Appx. 792, 796 n.4 (3d Cir. 2009) (unpublished opinion); see also *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (holding that the Sexually Violent Predator Act "does not establish criminal proceedings and . . . involuntary confinement pursuant to the Act is not punitive"). In fact, in *Hendricks*, the State specifically argued that confined sexually violent predators were *not* prisoners. 521 U.S. at 363 ("The State has represented that an individual confined under the Act is not subject to the more restrictive conditions placed on state prisoners, but instead experiences essentially the same conditions as any involuntarily committed patient in the state mental institution."). We can find no basis to depart from the reasoning of these courts, nor does the State provide any reason.

Moreover, Burch is not confined in a jail, prison, or other correctional facility. Jails, prisons, and other correctional facilities are just one category of institutions covered by 42 U.S.C. § 1997 et seq. It also applies to institutions "for persons who are mentally

8

ill, disabled, or retarded, or chronically ill or handicapped." 42 U.S.C. § 1997(1)(B). Persons, like Burch, found to be sexually violent predators fit better into the second category. See *Hendricks*, 521 U.S. at 358-59 (equating the term "mental abnormality" as used in the Sexually Violent Predator Act with the term "mental illness"). If Congress had intended for persons with mental illness or abnormality to exhaust administrative remedies before bringing § 1983 claims, it could have included them in § 1997e.

Second, the State argues that exhaustion of administrative remedies is advisable for policy reasons. The State asserts that the Legislature implemented an exhaustion requirement because district courts were overwhelmed with cases filed by residents of the SPTP. By going through the administrative process, the factual issues could "be vetted with a fully developed record for the district court to review." Additionally, because the State could conduct fact-finding electronically and by telephone, the State could save on travel, safety, and security related costs.

The Supreme Court has already rejected policy arguments similar to the State's. In *Patsy*, the Court held that "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." 457 U.S. at 513. The Court reiterated this point in *Felder*, stating that "States . . . may no more condition the federal right to recover for violations of civil rights than bar that right altogether . . . where the purpose and effect of those conditions, when applied in § 1983 actions, is to control the expense associated with the very litigation Congress has authorized." 487 U.S. at 144.

In conclusion, based on the holdings in *Patsy* and *Felder*, we have no hesitation in concluding federal law preempts the exhaustion requirement of K.S.A. 2018 Supp. 59-29a24. Congress intended for people, other than prisoners confined in jails, prisons, and other correctional facilities, to be able to bring § 1983 claims without having to exhaust available administrative remedies. Any state law to the contrary is invalid for burdening

9

the exercise of a federal right. Although there may be good policy reasons for requiring exhaustion, those state policies are not enough to contravene congressional intent.

Reversed and remanded for further proceedings.